

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

A&N ELECTRIC COOPERATIVE,

    Plaintiff,

V.                                                     Civil Action No. 2:23-cv-0576

DIETZEL ENTERPRISES, INC.

and

ALLSTATE TOWER, INC.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court are two Motions to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) filed by Allstate Tower, Inc. ("Allstate"), ECF Nos. 9, 10, and Dietzel Enterprises, Inc ("Dietzel") (collectively, "Defendants"). ECF Nos. 15, 16. Dietzel filed an Answer to the Complaint. ECF No. 18. A&N Electric Cooperative ("A&N" or "Plaintiff") filed a response to each Motion. ECF Nos. 20, 22. Allstate filed a reply, ECF No. 21, and Dietzel filed a reply. ECF No. 23. The Court has considered the parties' memoranda, and this matter is ripe for judicial determination. For the reasons stated herein, both Defendants' Motions to Dismiss is **GRANTED**.

### I. FACTUAL AND PROCEDURAL HISTORY

Relevant to Defendants' Motions to Dismiss and stated in the light most favorable to Plaintiff, the following alleged facts are drawn from the Complaint and attachments thereto.

1

*The Radio Tower Project*

According to the Complaint, Accomack County (the "County") owned a 280-foot radio tower located in the Town of Accomac, Virginia. Compl. Ex. A at 3, ECF No. 1. The radio tower had numerous maintenance issues that needed to be addressed. *Id.* On October 8, 2018, the County requested Morris & Ritchie Associates, Inc. ("MRA") to provide a structural analysis of the radio tower. *Id.* at 4. The radio tower was supported by three sets of anchor guy wires that extended from the anchors up to various points on the radio tower. *Id.* MRA drafted a "Tower Foundation Key Plan," recommending the removal of the existing guy anchors and installing three new guy anchors at different locations. *Id.* However, the Tower Foundation Key Plan did not include the three 13kV overhead high voltage power lines near anchor number 3. *Id.* A&N was the owner or operator of the overhead high voltage power lines. *Id.* at 7. The County included the Tower Foundation Key Plan in the bid package provided to the contractors who wished to work on the project. *Id.* On December 20, 2018, the County contracted with Allstate to perform the repairs and modifications to the radio tower, and then Allstate subcontracted to Dietzel to begin work on the radio tower in Spring 2019. *Id.* at 5.

In March 2019, a representative of Allstate, Sam Dorris, met with a representative of the County, Ben Fox, to discuss the overhead high voltage power lines near the new anchor number 3 foundation. *Id.* at 6. On April 18, 2019, Brad Turner of Allstate, Mr. Fox, and Jason Nagle of Dietzel met at the site to make sure they agreed on the placement of the new anchors. *Id.* at 8. Mr. Fox informed Mr. Nagle that he contacted A&N and that A&N was going to install insulators on the overhead lines so Dietzel could complete the work at anchor number 3 foundation site. *Id.*

2

*Kelvin Finck's Electrocution*

On April 19, 2019, the Dietzel crew began drilling, and Mr. Nagle noticed that A&N had not insulated the power lines near anchor number 3. *Id.* at 9. Mr. Nagle contacted Mr. Fox to inquire when the power lines would be insulated, and later that day, A&N installed the insulated sleeves without input from Allstate or Dietzel based on where Mr. Fox told it to place the insulators. *Id.* On April 22, 2019, the Dietzel drilling crew began to work on placing anchor number 3. *Id.* at 11. Mr. Nagle noticed that the lines were not properly insulated, however, the crew kept performing the work. *Id.* Mr. Finck, an employee of Dietzel, was aiding in the drilling process and was subsequently electrocuted by walking a steel cable into an overhead high voltage power line. *Id.* Unfortunately, on April 26, 2019, Mr. Finck died. Compl. ¶ 10.

*Mr. Finck's Estate's Wrongful Death Suit*

Mr. Finck's Estate filed a wrongful death suit against A&N, Allstate, Dietzel, and MRA in the Circuit Court of Accomack County. *Id.* ¶ 14. The court dismissed Dietzel from the action because of the exclusivity provision of the Virginia Worker's Compensation Act. *Id.* ¶ 15. Allstate settled with Mr. Finck's Estate before trial, and the court approved the settlement on June 13, 2023. *Id.* ¶ 16. On May 11, 2023, A&N settled with Mr. Finck's Estate before closing argument for $800,000, which the court approved on June 13, 2023. *Id.* ¶ 18. A&N believed the settlement paid to Mr. Finck's Estate was reasonable considering the possible outcome at trial. *Id.* ¶ 19.

*Applicability of the Overhead High Voltage Line Safety Act and A&N's Prior Demand Pursuant to It*

The Overhead High Voltage Line Safety Act ("OHVLSA") governs the safety and protection of persons engaged in work near overhead high voltage power lines. Va. Code § 59.1-406. The OHVLSA provides for the person responsible for the work near the overhead high voltage

3

power lines to provide notice[1] to the owner or operator of the power line and to make mutual temporary safety arrangements. Va. Code § 59.1-410. Allegedly, the power line that Mr. Finck contacted was an overhead high voltage power line. Compl. ¶ 27. The power line did not serve the radio tower Dietzel was working on and was not part of the radio tower. *Id.* ¶ 28. Allegedly, Allstate and Dietzel did not notify A&N of the work near the power line. *Id.* ¶¶ 32–35. Accordingly, A&N alleges that Allstate and Dietzel are obligated to indemnify A&N against its $800,000 settlement pursuant to OHVLSA § 59.1-414(B).[2] *Id.* ¶¶ 38–41. Specifically, A&N asserts one Count against Defendants:

Count I.   Indemnity Pursuant to the OHVLSA (*Id.* ¶¶ 44–51).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of actions that fail to state a claim upon which relief can be granted. Considering a Rule 12(b)(6) motion, courts may only rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). Courts will favorably construe the allegations of the complainant and assume that the facts alleged in the complaint are true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a court "need not accept the legal conclusions drawn from the facts," nor "accept as true

---

[1] Section 59.1-411 includes the steps a person must take to notify an owner or operator of an overhead high voltage line.

[2] The indemnity provision of the OHVLSA states:
> Any person responsible for the work who violates the requirements of § 59.1-408 and whose subsequent activities within the vicinity of overhead high voltage lines cause damage to utility facilities or cause injury or damage to any person or property shall indemnify the owner or operator of such overhead high voltage lines against all claims arising from personal injury or death, property damage, or service interruptions, together with attorneys' fees and other costs incurred in defending any such claims directly resulting from work in violation of § 59.1-408.

Va. Code § 59.1-414(B).

4

unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc., v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but the complaint must incorporate "enough facts to state a belief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). This plausibility standard does not equate to a probability requirement, but it entails more than a mere possibility that a defendant has acted unlawfully. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 677, and *Twombly*, 550 U.S. at 557). To achieve factual plausibility, plaintiffs must allege more than "naked assertions . . . without some further factual enhancement." *Twombly*, 550 U.S. at 557. Otherwise, the complaint will "stop[ ] short of the line between possibility and plausibility of entitlement to relief." *Id*.

### III. DISCUSSION

Under Rule 12(b)(6), Allstate and Dietzel move to dismiss Count I for failure to state a claim upon which relief can be granted. ECF No. 10 ("Allstate Mem. Supp."); ECF No. 16 ("Dietzel Mem. Supp."). The Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the parties are diverse and the amount in controversy exceeds $75,000. Thus, the Court will address both Motions together.[3]

A&N's claim in Count I alleges indemnity pursuant to OHVLSA. Specifically, A&N asserts "Allstate and Dietzel were persons responsible for the work Mr. Finck was performing at

---

[3] Although Allstate and Dietzel presented several basis for dismissal, the Court will only focus on Defendants exemption argument.

5

the time of the [i]ncident." Compl. ¶ 46. Mr. Finck's death was the result of Allstate and Dietzel's violation of § 59.1-408 by working within ten feet of an overhead high voltage power line. *Id.* ¶ 47. The work Mr. Finck was completing occurred without temporary safety arrangements being negotiated pursuant to § 59.1-410. *Id.* ¶ 48. Since A&N was the owner and operator of the overhead high voltage power line Mr. Finck contacted, A&N argues that Allstate and Dietzel are required to indemnify it for its $800,000 settlement with Mr. Finck's Estate and attorneys' fees and costs pursuant to § 59.1-414(B). *Id.* ¶¶ 49–50. However, Allstate and Dietzel argue in its Motion that the work Mr. Finck performed at the time was exempt from the OHVLSA pursuant to § 59.1-413. Allstate Mem. Supp. at 15; Dietzel Mem. Supp. at 5. The plain meaning of the exemption includes the maintenance work performed on the radio tower. Allstate Mem. Supp. at 15; Dietzel Mem. Supp. at 5. Additionally, the work performed was on a communications tower owned by the County, who hired an independent contractor to complete the work. Allstate Mem. Supp. at 15; Dietzel Mem. Supp. at 6. A&N responds that "the electrical line at issue was independent of the communication system on which Dietzel and Allstate were working [on] and otherwise did not serve it." ECF No. 20 at 5 ("A&N Resp. to Allstate"); ECF No. 22 at 2 ("A&N Resp. to Dietzel"). Additionally, A&N argues that the exemption is read to apply to work on "overhead high voltage electrical or communication lines, and their supporting structures, of systems like rail systems or communication towers," which does not include the radio tower. A&N Resp. to Allstate at 6; A&N Resp. to Dietzel at 2–3.

The Virginia legislature enacted the OHVLSA "to promote the safety and protection of persons engaged in work or activity in the vicinity of overhead high voltage lines." Va. Code Ann. § 59.1-406 (West). Under the OHVLSA, "No person shall . . . perform, or require any other person to perform, any work . . . that will cause any person or tools, machinery, ladders, antennas,

6

equipment, covered equipment, supplies, materials, or apparatus to be placed within 10 feet . . . of any overhead high voltage line." Va. Code Ann. § 59.1-408 (West). When a person seeks to work near any overhead high voltage power line, the person responsible for the work must notify the owner or operator of the overhead high voltage power line, and the owner or operator must make temporary safety arrangements for the work to be performed. Va. Code Ann. § 59.1-410 (West). However, there is an exemption under the OHVLSA. Section 59.1-413 provides:

> This chapter shall not apply to the construction, reconstruction, operation, and maintenance of overhead electrical or ***communication circuits or conductors*** and their supporting structures and associated equipment of (i) rail transportation systems, (ii) electrical generating, transmission or distribution systems, (iii) ***communication systems,*** including cable television, or ***(iv) any other publicly*** or privately ***owned system provided that such work on any of the foregoing systems is performed by the employees of the owner or operator of the systems or independent contractors engaged on behalf of the owner or operator of the system to perform the work.***

(emphasis added).

Here, the terms "communication circuits or conductors" and "communication systems" are not defined within the OHVLSA. The Court also did not find any Virginia Supreme Court case law defining these terms within the meaning of the statute. However, the Supreme Court of Virginia has stated "[w]hen the language of a statute is unambiguous, [courts] are bound by the plain meaning of that language." *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007). "The general rule of statutory construction is to infer the legislature's intent from the plain meaning of the language used." *Meeks v. Commonwealth*, 274 Va. 798, 802 (2007) (internal quotation and citation omitted). Thus, undefined terms should be given their ordinary meaning within the context it is used. *Id.* The plain meaning of the term "communication" is, "information communicated, information transmitted or conveyed."[4] The plain meaning of "circuit" is, "the

---

[4] Communication Definition & Meaning, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/communication (last visited Jul. 2, 2024).

7

complete path of an electric current including usually the source of electric energy."[5] The plain meaning of "conductor" is, "a material or object that permits an electric current to flow easily; a material capable of transmitting another form of energy (such as heat or sound)."[6] Lastly, the plain meaning of "system" is, "a group of devices or artificial objects or an organization forming a network especially for distributing something or serving a common purpose."[7]

Given the ordinary meaning of the terms included in the statute, the Court finds that the statute is not ambiguous and is clearly meant to include a radio tower within the exemption. The Court finds no reason to suggest a radio tower or "communications tower," as the parties put forth in their briefs, is not considered a communication circuit or conductor and a communication system within the plain meaning of the phrases. A&N would like the Court to interpret the exemption as applying "to work on overhead high voltage electric or communication lines, and their supporting structures, of systems like rail systems or communication tower," but the Court refuses to read the exemption narrowly. A&N Resp. to Allstate at 6; A&N Resp. to Dietzel at 2–3. The OHVLSA exemption does not limit itself to work only on overhead high voltage power lines as the legislature deliberately used the word "or" as a disjunctive to separate various phrases within the statute. If Virginia's legislature wanted the OHVLSA to be narrowed, they would have done so and not used the word "or."

Even if the radio tower is not considered a "communication system," it is owned by the County, who engaged with independent contractors, Allstate and Dietzel, to complete the work on behalf of the County, which falls squarely within the exemption describing a "publicly owned

---

[5] Circuit Definition & Meaning, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/circuit (last visited Jul. 2, 2024).
[6] Conductor Definition & Meaning, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/conductor (last visited Jul. 2, 2024).
[7] System Definition & Meaning, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/system (last visited Jul. 2, 2024).

system." *See* § 59.1-413. Nevertheless, the facts of the work that was performed on the radio tower fit into the OHVLSA exemption, and the indemnification clause does not apply. Therefore, Defendants' Motions to Dismiss is granted.

## IV. CONCLUSION

Based on the foregoing reasons, Defendants' Motions to Dismiss is **GRANTED**. ECF Nos. 9, 15. The Court **DENIES** A&N's request for leave to amend as the Court believes an amended complaint would be futile and would not survive a motion to dismiss. *See Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006); *Save Our Sound OBX, Inc. v. N. Carolina Dep't of Transportation*, 914 F.3d 213, 228 (4th Cir. 2019); *Brown v. First Advantage Background Servs. Corp.*, No. 1:23CV195, 2023 WL 7033908, at *1 (M.D.N.C. Oct. 26, 2023). Thus, this case is **DISMISSED with prejudice**.

The Court **DIRECTS** the Clerk to provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
July ___, 2024

Raymond A. Jackson
United States District Judge